# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

FELICIA MARTIN o/b/o,      :
M.F. MARTIN,

                           :

      Plaintiff,

                           :

vs.                          CA 06-0514-C

                           :

MICHAEL J. ASTRUE,
Commissioner of Social Security,  :

      Defendant.

## MEMORANDUM OPINION AND ORDER

The plaintiff, Felicia Martin, brings this action on behalf of her daughter, Mardasha F. Martin, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying Mardasha's application for child's insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 17 &18 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case . . . and order the entry of a final judgment, and conduct all post-judgment proceedings.")) Upon consideration

of the administrative record, plaintiff's proposed report and recommendation, the Commissioner's proposed report and recommendation, and the oral arguments of the parties on March 28, 2007, the undersigned determines that the Commissioner's decision denying child's insurance benefits is due to be affirmed.[1]

The Administrative Law Judge (ALJ) made the following findings:

1.      The child was born on August 7, 1998 and is an elementary school student.

2.      The child has not engaged in substantial gainful activity since the alleged onset date (20 CFR § 416.924(b)).

3.      The child has a "severe" impairment (20 CFR § 416.924(c)).

4.      The child's attention deficit hyperactivity disorder does not meet or medically equal the severity of the impairment listed in Part A or Part B of Appendix 1to Subpart P of Part 404 of Chapter 20 of the Code of Federal Regulations, (20 CFR §§ 416.924(d)(1), 416.925 and 416.926).

5.      The child does not have an "extreme" limitation in any domain of functioning, a "marked" limitation in two domains of functioning, and does not functionally equal the severity of the listings (20 CFR §§ 416.924(d)(2) and 416.926a).

---

[1]      Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 17 & 18 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

6.     The child's subjective complaints are considered credible only to the extent they are supported by the evidence of record as summarized in the text of this decision.

7.     The child has not been under a "disability," at any time from the alleged onset through the date of this decision (20 CFR § 416.906).

(Tr. 19-20)  The Appeals Council affirmed the ALJ's decision (Tr. 4-6) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

Prior to February 20, 1990, a child claimant would be found eligible for benefits under the Commissioner's regulations only if she was not performing substantial gainful activity, if her impairment met the duration requirement, and if her impairment was medically equivalent to a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 526, 110 S.Ct. 885, 889, 107 L.Ed.2d 967 (1990).  The Commissioner's regulations made no inquiries corresponding to the fourth and fifth steps of the adult analysis.  *Id.*  In *Zebley,* the Supreme Court stated in plain words that "a child is entitled to benefits if his impairment is as severe as one that would prevent an adult from working."  *Id*. at 529, 110 S.Ct. at 890.  The High Court rejected the Commissioner's argument that analysis of child disability claims of the type performed at steps four and five

of the adult analysis is not feasible.  *See id.* at 539, 110 S.Ct. at 896.

> The fact that a *vocational* analysis is inapplicable
> to children does not mean that a *functional*
> analysis cannot be applied to them.  An inquiry
> into the impact of an impairment on the normal
> daily activities of a child of the claimant's age --
> speaking, walking, washing, dressing, feeding
> oneself, going to school, playing, etc. -- is, in our
> view, no more amorphous or unmanageable than
> an inquiry into the impact of an adult's
> impairment on his ability to perform "any other
> kind of substantial gainful work which exists in
> the national economy[.]"

*Id.* at 539-540, 110 S.Ct. at 896 (citation omitted).

Following the *Zebley* decision, the Commissioner made wholesale revisions in the regulations addressing child disability claims.  The Commissioner began employing  a four-step sequential analysis for determining whether a child is disabled.  *See* 20 C.F.R. § 416.924(c)-(f).  The four steps were as follows: (1) If the child is working and that work is substantial gainful activity, she will be found not disabled regardless of her medical condition or age, education, or work experience; (2) If the child does not have any severe impairment(s) she will be found to be not disabled; (3) If the child has an impairment(s) which meets the duration requirement and is listed in appendix 1, or is equal to a listed impairment, she will be found to be disabled; and (4) If the child has a severe impairment(s) but that impairment(s)

does not meet or equal in severity a listed impairment, the impact of the child's impairment(s) on her overall ability to function independently, appropriately, and effectively in an age-appropriate manner is assessed and this individualized functional assessment will be used to decide whether the child has an impairment(s) that would prevent an adult from engaging in substantial gainful activity and, thus, to determine whether or not the child is disabled. *Id.*

The comparable severity standard was eliminated with passage of the Personal Responsibility and Work Opportunity Act of 1996. *See* Pub.L. No. 104-193, 110 Stat. 2105 § 211(b)(2) (1996) (directing the Commissioner to eliminate the individual functional assessment set forth in the regulations at 20 C.F.R. §§ 416.924d and 416.924e). This act, which  was signed into law on August 22, 1996, wrought another change in the disability determination process for children.  The 1996 Act provides that "[a]n individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). The regulations implementing this definition of disability provide a three-step

process for determining eligibility for benefits which is identical to the first three steps of the post-*Zebley* analysis, save with respect to the third step. The first step still requires the ALJ to determine whether the child is engaged in substantial gainful activity and the second step still requires the ALJ to determine whether the child has a severe impairment or combination of impairments. At the third step, the ALJ must determine whether the severe impairments "*meet, medically equal, or functionally equal the listings*. An impairment(s) causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings." 20 C.F.R. § 416.924(d) (2004) (emphasis in original).

> A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations "meet[], medically equal[], or functionally equal[] the [L]istings." A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations "are at least of equal medical significance to those of a listed impairment."

> Finally, even if the limitations resulting from a child's particular impairment are not comparable to those specified in the Listings, the ALJ can still conclude that those limitations are "functionally equivalent" to those in the Listings. In making this determination, the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities. The

C.F.R. specifies six major domains of life:

> (i)  Acquiring and using information;
> (ii) Attending and completing tasks;
> (iii) Interacting and relating with others;
> (iv) Moving about and manipulating objects;
> (v)  Caring for [one]self; and
> (vi) Health and physical well-being.

The C.F.R. contains various "benchmarks" that children should have achieved by certain ages in each of these life domains. A child's impairment is "of listing-level severity," and so "functionally equals the listings," if as a result of the limitations stemming from that impairment the child has 'marked' limitations in two of the domains [above], or an 'extreme' limitation in one domain."

*Shinn ex rel. Shinn v. Commissioner of Social Security*, 391 F.3d 1276, 1279, (11th Cir. 2004) (internal citations omitted).

The new standard clearly is more stringent given Congress's decision, as stated in the House conference report, to confine the definition of childhood disability to the first three steps of the sequential evaluation process. *Hart ex rel. Thomas v. Chater*, 963 F.Supp. 835, 839 (W.D.Mo. 1997). The report reads in pertinent part as follows:

"The conferees intend that only needy children with severe disabilities be eligible for SSI, and the Listing of Impairments and other current disability determination regulations as modified by these provisions properly reflect the severity of disability contemplated by the new statutory definition. . . . The conferees are also aware that SSA uses the term 'severe' to often mean 'other than minor' in an initial screening procedure for

7

> disability determination and in other places.  The conferees,
> however, use the term 'severe' in its common sense meaning."

*Id*. (quoting 142 Cong. Rec. H8829-92, 8913 (1996 WL 428614), H.R. Conf.
Rep. No. 104-725 (July 30, 1996)); *see also* 20 C.F.R. § 416.924(a) (2004)
("We follow a set order to determine whether you are disabled.  If you are
doing substantial gainful activity, we will determine that you are not disabled
and not review your claim further.  If you are not doing substantial gainful
activity, we will consider your physical or mental impairment(s) first to see if
you have an impairment or combination of impairments that is severe.  If your
impairment(s) is not severe, we will determine that you are not disabled and
not review your claim further.  If your impairment(s) is severe, we will review
your claim further to see if you have an impairment(s) that meets, medically
equals, or functionally equals the listings.  If you have such an impairment(s),
and it meets the duration requirement, we will find that you are disabled.  If
you do not have such an impairment(s), or if it does not meet the duration
requirement, we will find that you are not disabled.").

Plaintiff contends that the following errors were made in this case: (1)
the ALJ erred in failing to find Mardasha's learning disability a severe
impairment; and (2) the ALJ erred in failing to give weight to the childhood
disability form completed by Mardasha's treating psychiatrist, Dr. Chris

8

Jenkins.

It is plaintiff's contention that the ALJ erred in failing to find Mardasha's learning disability to be a severe impairment in light of the low threshold showing necessary in this Circuit to establish a severe impairment. *See McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected."). The Court disagrees with the plaintiff's argument in this regard. Nowhere in the record is there any indication or diagnosis of a specific learning disorder, such as a receptive or expressive language disorder, dyslexia or a developmental disorder in reading or math. What plaintiff points to as evidence of a specific learning disability is a reference on the Individualized Education Program ("IEP") drawn up for Mardasha through the Clarke County Public School System (*see* Doc. 90-100) that "Mardasha meets state guidelines for special education services in the area of specific learning disabilities." (Tr. 90) All this means is that Mardasha became eligible for--or qualified for--special education assistance  under the specific learning disabilities area of disability, not that she has a specific learning disability beyond that of attention deficit hyperactivity disorder ("ADHD"). *See Douglas v. Apfel*, 1999 WL 1021832, *3 (E.D. La. 1999) ("In April of 1995, an Orleans Public School

System Integrated Report of Evaluation . . . regarding Ryan Douglas was submitted to the appropriate parties. In the Report, Ryan was found to be 'Learning Disabled,' which term is defined on page fourteen of that document. I[n] pertinent part, it states that Learning Disabled means 'severe and unique learning problems . . . [t]he term includes such conditions as attention deficit, perceptual handicaps, process disorders, minimal brain dysfunction, brain injury, dyslexia, or sensory-motor dysfunction."). Moreover, in evaluating the impact of Mardasha's ADHD the ALJ fully considered the problems this disorder presented in the school environment and with respect to the child's ability to learn. (*See* Tr. 14-20) Accordingly, the Court finds no error in the ALJ failing to find that plaintiff has a severe learning disability beyond that of ADHD. Stated differently, the evidence of record establishes that this condition/disability would not entail any significant limitation of function not already contemplated by the ALJ in his analysis of the functional equivalency issue; therefore, the ALJ committed no error in failing to separately find that plaintiff has a severe learning disability.

Plaintiff's only other argument is that the ALJ erred in failing to state the weight given to the Childhood Disability Evaluation Form completed by Dr. Chris Jenkins. (Doc. 10, at 5) While the ALJ in this case did not

specifically state the weight he was according Jenkins' assessment, the ALJ's

decision in this case clearly establishes that, on the whole, the ALJ rejected Dr.

Jenkins' assessment. (Tr. 15-19)

> On October 28, 2004, Chris Jenkins, M.D., a psychiatrist with the mental health center, completed a questionnaire on which was indicated the child had marked limitation in the domains of acquiring and using information and attending and completing tasks. Dr. Jenkins indicated a less than marked limitation of the child's ability [to] interact and relate with others and in her ability to move about and manipulate objects. Dr. Jenkins indicated there were no limitations of the child['s] ability to care for herself or with respect to her health and physical well being.

.        .        .

> The child's impairment, attention deficit hyperactivity disorder, is listed under Section 112.11 of Appendix 1. . . . Although Dr. Jenkins indicated the child had an impairment that met a listed impairment, the record does not document any impulsiveness, nor even any marked inattention or marked hyperactivity over any period of 12 months. The child does not have an impairment that meets or medically equals any impairment listed in Appendix 1.

.        .        .

> **<u>Acquiring and Using Information</u>**
>
> This domain considers how well the child acquires or learns information, and how well the child uses information learned.
>
> In this domain, the child has less than "marked" limitations. Although Dr. Jenkins indicated marked limitations in this domain, the timely made notes and mental status evaluation assessments from the mental health center show that, on

appropriate medication, the child substantially improved. Further, the record shows that within 12 months of beginning treatment for hyperactivity the impairment was controlled with medications. Although the child might have had marked limitations prior to medication being prescribed, and on occasions when she does not take her medication, the specific treatment notes from the mental health center, as well as the report from the consulting psychologist, and the observations of the child's activities recorded on the individualized education program and noted by Dr. Brantley, in combination convince the Administrative Law Judge that, during any period of 12 consecutive months, the child has had less than marked limitations in this domain.

**Interacting and Relating with Others**

The issue in this domain is how well the child initiates and sustains emotional connections with others, develops and uses the community's language, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others.

In this domain, the child has less than "marked" limitations. Dr. Jenkins and Ms. Atchison indicated limitations in this domain but, as addressed above, the child clearly and substantially improved with appropriate medication and there is no period of 12 consecutive months documented in the record before the Administrative Law Judge during which the child had marked limitations in this domain.

**Moving About and Manipulating Objects**

This domain considers how well the child's gross motor skills (body movement) and fine motor skills (hand and finger movements) have developed.

In this domain, the child has less than "marked" limitations. No medical source suggested marked limitations in this domain. . .

. The totality of the evidence of record, and the expertise of Dr. Jenkins and of Dr. Brantley, are convincing to the Administrative Law Judge that the child [has] less than marked limitations in this domain.

**<u>Caring for Yourself (Self-care)</u>**

The issue in this domain is how well the child maintains a healthy emotional and physical state including appropriately seeking and maintaining physical and emotional wants and needs; coping with stress and environmental changes; and caring for his or her own health, possessions, and living area.

.    .    .

In this domain, the child has less than "marked" limitations. Dr. Jenkins indicated less than marked limitations in this domain, and Dr. Brantley indicated that medications fully controlled the child's hyperactivity. There is no substantial evidence to the contrary.

**Health and Physical Well-Being**

In this domain, the issue is the cumulative physical restrictions upon functioning of physical and mental impairments and their associated treatments or therapies on the child's functioning not considered in the "Moving About and Manipulating Objects" domain.

.    .    .

In this domain, the child has no limitations. The record from Dr. Miller does not describe a history of 12 consecutive months for any physical impairment or combination of impairments. No physical limitations were alleged, and none were noted by the mental health center or by the teacher.

(Tr. 15, 16, 17-18 &19) As indicated above, the foregoing analysis establishes

13

that the ALJ rejected portions of Dr. Jenkins' assessment and accepted other portions of that assessment. (*See id.*) The Court finds that the ALJ's rejection of certain portions of Dr. Jenkins' assessment--that is, the portion indicating Mardasha's ADHD meets listing 112.11 and those portions indicating that Mardasha has marked limitations in the domains of acquiring and using information and interacting and relating with others--was justified and supported by the evidence of record as a whole, including Dr. Jenkins' own treatment records. (Tr. 90-99, 175-182, 185-191, 199-210 & 218) Accordingly, plaintiff's argument in this regard need fail. Because plaintiff asserts no other assignments of error and this Court finds substantial support in the record for the ALJ's determination that plaintiff's ADHD does not meet, medically equal or functionally equal a listed impairment, the decision denying benefits is due to be affirmed.

## **CONCLUSION**

Based upon the foregoing, the Court **ORDERS** that the Commissioner's decision denying the application made on behalf of M.F. Martin for child's insurance benefits be affirmed.

**DONE** and **ORDERED** this the 11th day of April, 2007.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**